**Elaine A. CARDWELL, Appellant (Plaintiff),**

v.

**AMERICAN LINEN SUPPLY, a Wyoming Corporation, Appellee (Defendant).**

**No. 92–110.**

Supreme Court of Wyoming.

Dec. 11, 1992.

Bruce N. Willoughby of Murane & Bostwick, Casper, for appellant.

Judith A. Studer of Schwartz, Bon, McCrary & Walker, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

MACY, Chief Justice.

The appellant, Elaine A. Cardwell, contends that the district court erred in granting a summary judgment in favor of the appellee, American Linen Supply, on her assertion that she was discharged from her employment because she filed a worker's compensation claim. She also contends that her discharge was achieved in a manner contrary to the employee handbook issued by American Linen Supply and that the handbook constituted an employment contract.

We affirm.

Ms. Cardwell states these issues:

Is the termination of the Plaintiff after filing a Workers' Compensation Claim contrary to the public policy of the State of Wyoming as set forth in W.S. § 27–14–104?

Was the termination of the Plaintiff contrary to the written policy of the Plaintiff contained in the Employe[e] Handbook which constitutes a contract of employment?

Did the reason given for the termination of the Plaintiff that she could not perform her job follow the provisions of the Employee Handbook which constituted a contract of employment?

In response, American Linen Supply asserts:

1. Did the District Court correctly grant summary judgment to an employer in an employment termination case where the employee was, and is present-

ly, physically unable to perform her former duties?

2. Does an employee's handbook that contains progressive disciplinary procedures apply when an employee is discharged for physical inability to perform the work, as opposed to disciplinary reasons?

3. Did appellant file a timely notice of appeal?

Ms. Cardwell began working for American Linen Supply's predecessor in April 1980. She received an employee handbook from American Linen Supply on October 2, 1987. In 1988, Ms. Cardwell began having problems with her feet and sought medical attention. Her duties required her to stand on concrete floors for most of her work shift. American Linen Supply attempted to accommodate her medical problems by giving her chores which would allow her to sit for at least part of the day. Ms. Cardwell took a leave of absence from April 28, 1989, through June 4, 1989, in an attempt to relieve her tendinitis and other foot problems. On November 28, 1989, she filed a worker's compensation claim and received temporary total disability benefits from November 29, 1989, through April 30, 1991. Ms. Cardwell's physician recommended that she not stand on concrete floors at all but, in any event, directed that she could not do so for more than twenty-five percent of the work day. Ms. Cardwell was discharged on December 8, 1989, because she was no longer physically able to perform the tasks available at American Linen Supply. American Linen Supply maintained that it simply did not have a job for someone who was not able to stand most of the day or work on concrete floors.

■ We first address American Linen Supply's contention that the notice of appeal was not timely filed because Ms. Cardwell's post-judgment motion for reconsideration of the summary judgment order did not toll the running of the time for filing the notice of appeal. The district court entered the summary judgment order on March 12, 1992, and Ms. Cardwell filed a "Motion for Reconsideration" on March 26,

1992. Although the initial motion was not specifically so denominated on its face, it was clearly a motion to alter or amend the judgment as contemplated by W.R.C.P. 59(e) and was timely filed. On March 27, 1992, the motion was refiled in an amended form which included a specific reference to W.R.C.P. 59. On April 20, 1992, the district court entered an order denying the motion. The notice of appeal was filed on April 30, 1992. W.R.A.P. 2.01 [1] specifically provided that a motion to alter or amend a judgment tolls the time for filing a notice of appeal. The notice of appeal was timely filed within fifteen days of the order denying the W.R.C.P. 59(e) motion.

■ We next address Ms. Cardwell's contention that she was discharged contrary to public policy for having filed a worker's compensation claim. In structuring her argument, Ms. Cardwell relies upon this Court's decision in *Griess v. Consolidated Freightways Corporation of Delaware*, 776 P.2d 752 (Wyo.1989). We perceive that *Griess* has little, if any, application to the facts of this case. In that case, we held that an employee who was terminated from employment for having filed a worker's compensation claim, and who was not covered by a collective bargaining agreement, had a cause of action in tort against the employer. 776 P.2d at 754. That ruling was founded upon public policy which emanated from Article 10, § 4 of the Wyoming Constitution and Wyo.Stat. § 27–14–104(b) (1991). However, in *Griess*, the employer told the employees that they would not be called back to work if they filed worker's compensation claims for on-the-job injuries; thus, the employees were readily able to structure a prima facie case of retaliatory discharge. Ms. Cardwell's assertion that she was terminated for filing her worker's compensation claim is just that—merely an assertion. She relies upon the juxtaposition of the date she filed her claim and the date she was terminated, which was some ten days later. She does not take into account that her difficulties in performing her duties continued for more

---

**1.** Revised effective November 1, 1992.

than a year prior to her discharge and that American Linen Supply patiently accommodated her medical difficulties during that time period. As we said in *Lankford v. True Ranches, Inc.*, 822 P.2d 868, 872 (Wyo.1991):

> There is a distinction between a termination for the exercise by the worker of his rights under the worker's compensation law and a termination for inability to do the work, even if such inability is caused by an accident requiring the exercise of worker's compensation rights. The disability and partial disability benefits of the worker's compensation law are in recognition of this distinction.

The issues inherent in "retaliatory discharge" claims have been addressed in most jurisdictions by statutes or judicial decisions. *See* 2A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 68.36 (1987) and Theresa Ludwig Kruk, Annotation, *Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim*, 32 A.L.R.4th 1221 (1984). *Griess* established the existence of such a cause of action in Wyoming, and *Lankford* serves as an example of a matter wherein a summary judgment was providently utilized. In meaningfully adjudicating the remedy recognized by *Griess*, especially absent legislative action in this regard within the Wyoming Worker's Compensation Act itself, we must set some standards so as to avoid the appearance of incongruous results. Although premising it upon a statute, the Oklahoma Supreme Court recently settled that very question in a manner which we find persuasive and adopt for use in Wyoming:

> A review of our prior decisions, especially in view of the apparent confusion generated in this case, persuades us that it is desirable and necessary to provide further guidance to the trial courts and to the litigants they serve in order to promote the orderly presentation and resolution of retaliatory discharge claims. We conclude that the jurisprudence developed in the law of employment discrimination, as it pertains to the order and burdens of proof, is particularly adaptable to the problems encountered in cases brought under [Wyoming's retaliatory discharge doctrine]. It should be emphasized that we are applying standards developed by the federal courts only to the degree specified and discussed in this opinion; we do not mean to signal the wholesale adoption and application of the federal law of employment discrimination to retaliatory discharge claims....

> ... The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the [Wyoming Worker's Compensation] Act, and *consequent* termination of employment. After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason.... Two of these reasons include the employee's inability to perform the assigned duties, or the bad faith pursuit of a compensation claim. The employer need not persuade the court that it was actually motivated by the proffered reasons. The employer's burden is a burden of production of relevant and credible evidence, not a burden of persuasion. It is sufficient if the employer's evidence raises a genuine issue of fact concerning whether it retaliatorily discharged the employee.

> To accomplish this, the employer must set forth clearly, through the introduction of admissible evidence, the reasons for the employee's termination. The explanation provided must be legally sufficient to justify entering judgment for the employer. If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the employer serves two purposes—it meets the plaintiff's prima facie case by presenting a

legitimate reason for the action, and it frames the factual issue with sufficient clarity to provide the worker with a full and fair opportunity to demonstrate that the reason offered by the employer for terminating the employee was not the true reason for the employment decision but was, rather, a pretext. The sufficiency of the rebuttal should be evaluated by the extent to which it fulfills these functions.

However, the nature of the burden which shifts to the employer must be understood in connection with the employee's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee. The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual. This burden merges with the ultimate burden of persuading the court that she has been the victim of retaliatory discharge. The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Buckner v. General Motors Corporation,* 760 P.2d 803, 806–07 (Okla.1988) (emphasis in original and footnotes omitted).

The district court utilized a procedure very much akin to that used in *Buckner.* As noted earlier, Ms. Cardwell's "proof" was simply the juxtaposition of the date she filed her worker's compensation claim and the date she was discharged. Professor Larson describes the burden of proof for retaliation:

> Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and su-

pervisory evaluations. Any evidence of an actual pattern of retaliatory conduct is, of course, very persuasive.

2A LARSON, THE LAW OF WORKMEN'S COMPENSATION, *supra* at 13–187 to 13–188.

Ms. Cardwell showed proximity in time. However, the events leading up to her discharge dispel the notion that proximity in time may be read as being a retaliation. Ms. Cardwell was allowed leave from her job for extensive periods of time preceding her discharge. When she did work, she worked in a manner inconsistent with the employer's usual policy; i.e., all workers must perform tasks requiring a considerable amount of standing. American Linen Supply discharged Ms. Cardwell after making a substantial effort to find a solution which would enable Ms. Cardwell to work and, at the same time, allow American Linen Supply to maintain the production level consistent with the sound operating practices of its labor intensive business. We do not think that Ms. Cardwell met her burden of establishing a prima facie case of retaliatory discharge. We are convinced that the employer demonstrated, without even the slightest rebuttal coming from Ms. Cardwell, that the discharge was motivated by Ms. Cardwell's inability to perform the assignments which her employer had, of necessity, delegated to her. The district court correctly granted the summary judgment in favor of American Linen Supply. Once the moving party has properly supported a motion for a summary judgment by affidavits, answers to interrogatories, or depositions, the party opposing the summary judgment cannot rely upon allegations or denials in his pleadings but must come forward with materials demonstrating a genuine issue of material fact for trial. *RHF v. RMC (Adoption of JLP),* 774 P.2d 624, 629 (Wyo.1989).

■ Finally, we address Ms. Cardwell's contention that the employee handbook created an employment contract whereby she could expect to be disciplined in accordance with its terms. We do not need to address this question in much detail. The employee handbook, as well as the more generous

locally established policy concerning progressive discipline, dealt with the subjects of discipline and "violations of company policy." In context, discipline means, "punishment by one in authority esp. with a view to correction or training." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 644 (1986). In context, the phrase "violations" of company policy connotes an infringement or irreverence toward those policies. *Id.* at 2554. American Linen Supply evinced no intent to "punish" Ms. Cardwell because she became disabled. Indeed, its behavior was quite to the contrary. Nor did Ms. Cardwell's inability to work constitute "irreverence" toward the company's policy requiring employees to satisfactorily perform their assignments; thus, she could not have been subject to discipline or progressive warnings. Ms. Cardwell was medically incapacitated to a degree which rendered her incapable of performing the duties which American Linen Supply could make available to her. The extent to which the employee handbook constituted a contract, and we make no decision in that regard, was irrelevant to the resolution of this dispute.

Affirmed.

CARDINE, J., filed a specially concurring opinion.

CARDINE, Justice, specially concurring.

I concur in the result that summary judgment not be reversed because the appeal, not being timely filed, should be dismissed.

First, I question that a Motion for Reconsideration is a Motion to Alter or Amend the Judgment under W.R.C.P. 59(e). The motion was not to alter or amend the summary judgment. It was a motion to reconsider which was to vacate or set aside the summary judgment. The court, without citation of authority, legal reasoning, or policy consideration, just blandly declares a motion not presented as a W.R.C.P. 59(e) motion to be a W.R.C.P. 59(e) motion, which in any event was not timely filed. This type of result-oriented decision adds confusion to our practice and should be avoided.

Nor do I agree with the wholesale adoption of language from *Buckner v. General Motors Corp.,* 760 P.2d 803 (Okl.1988), establishing a rule of law for burden of proof and defenses to a retaliatory discharge claim. First, burden of proof was never raised as an issue in this case, is not before us, and should not be the subject of an advisory opinion. Second, this was a summary judgment case, not a trial in which the burden of proof might be involved. Third, I would not hold that every discharge of an employee after filing a worker's compensation claim, without more, creates not only a retaliatory discharge lawsuit but shifts the burden of proof to the employer. *Buckner,* cited for the burden of proof rule which so enamors this court as to result in wholesale adoption, is another of those senseless, confusing rules that accomplishes nothing to further the creation of understandable, easily applied rules of law. Thus, it is said in *Buckner* that the worker need only establish termination after the filing of a worker's compensation claim (a prima facie case) and the *burden of proof* "appropriately shifts to the employer...." Maj. op. at 599, *quoting Buckner,* 760 P.2d at 806. Now, at this stage, the employer has the burden of proof and the employee has the burden of persuasion, for the adopted quote further states, "the burden of persuasion never shifts[,] and the employee bears the burden of persuasion that the reason given for termination was pretextual." Maj. op. at 599, *quoting Buckner,* 760 P.2d at 807. The essence of the rule is that this is a type of prima facie case that carries no presumption; requires no evidence to rebut; and may not, even in the absence of employer rebuttal evidence, result in judgment, for the burden of persuasion remains with the employee. If the employee fails to persuade, no matter what the burden, judgment will be for the employer. That is no rule at all. It is nonsense.

Were this question presented here, I would hold that the burden to prove a retaliatory discharge is always with the worker making the claim and does not shift to the employer. If the evidence of the worker making a claim of retaliatory dis-

charge preponderates over that of the employer, the worker should prevail, otherwise he should not.