Gary A. BOONE, Appellant (Plaintiff),

v.

**FRONTIER REFINING, INC.,**
**Appellee (Defendant).**

**No. 98–362.**

Supreme Court of Wyoming.

Sept. 20, 1999.

Representing Appellant: Bruce S. Asay of Associated Legal Group, LLC, Cheyenne, Wyoming.

Representing Appellee: Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN & HILL, JJ.

MACY, Justice.

Appellant Gary Boone filed several claims against Appellee Frontier Refining, Inc., contesting its termination of his employment. He appeals from the summary judgments which were granted in favor of Frontier Refining.

We affirm.

## ISSUES

Boone presents several issues for our consideration on appeal:

ISSUE I: Were oral representations made to the Appellant at the time of his hiring, as well as other memoranda provided to the Appellant, sufficient to alter the presumption of at-will status?

ISSUE II: Did the District Court err in granting [s]ummary judgment on the issues of implied contract/promissory estoppel?

ISSUE III: Did the District Court err in granting summary judgment as to the Appellant's Duty of Good Faith and Fair Dealing claim?

ISSUE IV: Did the District Court err in granting summary judgment as to the Appellant's claim of Retaliatory Discharge?

ISSUE V: Did the District Court improperly ignore the Doctrine of Law of the Case?

## FACTS

In November 1991, Frontier Refining offered Boone a job as a senior project engineer in its Cheyenne refinery. Boone accepted the offer, resigned from his position with another company, and moved his family from Texas to Cheyenne. During Boone's tenure at the refinery, Frontier Refining assigned him to a team which was working on a special project.

In June 1992, Boone observed a condition at the refinery which he considered to be unsafe. He reported the condition to the refinery operations person. Very shortly thereafter, an explosion and a fire occurred in the refinery. Several Reiman Construction Company employees were working in the area of the explosion. Some of those employees were injured by the explosion and the fire.

The Reiman Construction employees and/or their families commenced legal actions against Frontier Refining. Frontier Refining's managers conducted an investigation of the explosion. They spoke with Boone, and he told them about his observation and the report he had made of the unsafe condition. Boone claimed that, after he spoke with the managers about the explosion, they began to treat him differently. The Reiman Construction employees and/or their families eventually settled their disputes with Frontier Refining.

Frontier Refining conducted an appraisal of Boone's work performance on two occasions while he was employed by the company. Both performance appraisals indicated that Boone's work was less than satisfactory. Frontier Refining terminated Boone's employment on August 20, 1993, citing poor work performance as the basis for the discharge.

Boone filed a complaint against Frontier Refining on August 18, 1997, articulating claims for retaliatory discharge and breach of the implied covenant of good faith and fair dealing. Frontier Refining filed a motion for a summary judgment, and the district court held a hearing on the motion. The district court subsequently granted a summary judgment in favor of Frontier Refining on Boone's claims and permitted Boone to amend his complaint.

Boone filed an amended complaint, alleging that Frontier Refining had breached the terms of an implied employment contract created by its employment manual. Frontier Refining filed a motion seeking a summary judgment on that claim. The district court held a hearing and initially denied Frontier Refining's motion, stating that the evidence suggested the parties may have entered into

an oral contract for continued employment. Frontier Refining filed a motion for reconsideration, maintaining that it did not address the possibility that an oral contract existed because the only claim set out in Boone's amended complaint was that an implied contract arose from the employment manual. The district court reconsidered Frontier Refining's motion and granted it a summary judgment on Boone's employment manual claim. The district court again allowed Boone to amend his complaint.

Boone filed an additional amended complaint on July 31, 1998, alleging breach of an implied contract and promissory estoppel. Frontier Refining filed another motion for a summary judgment, and the district court granted that motion. Boone appealed to the Wyoming Supreme Court.

## DISCUSSION

### A. Standard of Review

Our standard for reviewing summary judgments is well known. A summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to be awarded a judgment as a matter of law. *Marchant v. Cook*, 967 P.2d 551, 553–54 (Wyo.1998); *Covington v. W.R. Grace–Conn., Inc.*, 952 P.2d 1105, 1106 (Wyo. 1998); *see also* W.R.C.P. 52(c). The Wyoming Supreme Court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as the district court employed and used. *Covington*, 952 P.2d at 1106. We examine the record in the light most favorable to the party who opposed the motion for a summary judgment, and we give that party the benefit of all the favorable inferences that may be fairly drawn from the record. *Id;* *Marchant*, 967 P.2d at 554. We do not accord deference to the district court's decisions on issues of law. *Ahearn v. Tri–County Federal Savings Bank*, 948 P.2d 896, 897 (Wyo. 1997).

### B. Nature of Employment Relationship

Boone asserts that the district court erred when it determined that he was an at-will employee and granted the summary judg-

ments in favor of Frontier Refining on his employment contract claims. He argues that Frontier Refining made oral representations to him which changed his employment status from at-will to continued. Boone also maintains that an implied contract for continued employment arose by virtue of statements made in Frontier Refining's performance appraisal forms and its employment manual. Frontier Refining contends that the district court's decisions on Boone's employment contract claims were correct. We agree with Frontier Refining.

■ In Wyoming, employment relationships are presumed to be at-will. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1249 (Wyo.1997); *Loghry v. Unicover Corporation*, 878 P.2d 510, 512 (Wyo.1994). In an at-will employment relationship, either the employer or the employee may terminate the relationship at any time, for any reason or for no reason at all. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 217 (Wyo.1994). The at-will presumption may be rebutted by a showing that the parties entered into an express or implied agreement which prohibited the employer from discharging the employee without just cause. *Brodie v. General Chemical Corporation*, 934 P.2d 1263, 1265 (Wyo.1997); *Davis*, 934 P.2d at 1249. Express contracts and implied contracts for continued employment are equally enforceable. *Wilder*, 868 P.2d at 217. An express contract for continued employment exists when the terms of the agreement are declared by the parties in writing or verbally. 868 P.2d at 216. An implied contract for continued employment is created by "a mutual agreement and intent to promise which is found in the acts or conduct of the party sought to be bound." *Id.* Employment contracts which are set out in employee handbooks or policies are implied contracts. 868 P.2d at 217.

■ We consider first Boone's claim that Frontier Refining made statements during his job interview which created an oral contract for continued employment. Boone testified at his deposition that Frontier Refining told him that he would possibly be chosen for a management or supervisory position within a short period of time after he began his

employment with the company. Frontier Refining also apparently stated that Boone would receive regular performance appraisals and pay raises. Boone admitted, however, that he and Frontier Refining did not discuss why or under what circumstances his employment could be terminated.

The statements made by Frontier Refining during Boone's interview did not create a contract for continued employment. Its statement that Boone would possibly be chosen for a management position within a short period of time after his employment commenced did not rise to the level of being a promise, and it certainly did not create a contract for continued employment. Likewise, Frontier Refining's statement that Boone would receive regular performance appraisals and pay raises did not constitute a promise of job security. *See Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 276 (Wyo. 1997).

Boone also claims that he and Frontier Refining had an understanding that he would be employed as long as he accomplished the work that was expected of him. As evidence of this understanding, he points to Frontier Refining's statement that he would possibly be chosen for a management position. In *Wilder,* a discharged employee stated that his employer had made an explicit oral promise that he would be employed for as long as he accomplished the work that was required of him. 868 P.2d at 218. We ruled that, under the facts presented there, a disputed issue of material fact existed as to whether or not the parties had entered into an oral contract for continued employment. 868 P.2d at 218–19.

■ There is an important distinction between the facts of *Wilder* and the facts of this case. Unlike the employer in *Wilder,* Frontier Refining did not promise Boone that he would be employed as long as he did his job. In fact, Boone admitted that there was no discussion during his job interview about the circumstances under which his employment could be terminated. Boone simply assumed that he had job security. Boone's subjective belief that he could not be discharged unless just cause existed was insufficient to create a contract for continued

employment. *See Allen v. Safeway Stores Incorporated,* 699 P.2d 277, 282 (Wyo.1985). The district court correctly determined that the parties did not enter into an oral contract for continued employment.

■ We turn now to the statements in the performance appraisal form. Frontier Refining's performance appraisal form stated:

> The purpose of performance feedback and appraisal at Frontier ... is to improve each employee's productivity and long-range value to the Company. Performance appraisal consists of a formal evaluation of current performance and a plan for future improvement. It is Company policy that a performance appraisal will be conducted at least once a year for each employee. A supervisor or employee may request that the period be shorter in order to document improvement. This form is to be filled out by the direct supervisor of the employee. It is generally recommended that the supervisor obtain feedback from the employee and any other sources prior to completing this form.

■ In certain instances, statements made in the context of a performance appraisal can give rise to an implied contract for continued employment. *See Davis,* 934 P.2d 1246; *Lincoln v. Wackenhut Corporation,* 867 P.2d 701 (Wyo.1994). A contract for continued employment is not formed, however, if the statements do not manifest an intent on the employer's part to create an employment relationship in which the employee may be discharged only for cause. *Terry,* 947 P.2d at 275–76.

Frontier Refining's performance appraisal form did not address termination in any manner. It simply indicated that Frontier Refining intended to use the performance appraisal process as a tool to enhance its employees' job performances. Better job performance increases an employee's value to his employer regardless of whether the employment relationship is at-will or continued. The performance appraisal form did not manifest an intent by Frontier Refining to include job security as a part of its employment relationship with its employees.

■ Boone also contends that Frontier Refining's employment manual created an implied contract for continued employment. The employment manual included procedures for disciplining and discharging employees. Boone claims that Frontier Refining breached the implied employment contract by failing to follow the discharge procedures outlined in the employment manual.

The facts of the case at bar are somewhat different from those in our typical employment handbook cases. Boone admitted that Frontier Refining did not give him the employment manual and that he did not read it. He stated that he had seen the manual but that he could not remember when or under what circumstances he saw it. Tommy Woznick, a Frontier Refining manager, averred that the manual was distributed only to members of management and some supervisory employees and that Boone was not a manager or a supervisor at Frontier Refining. The district court determined that, because the employment manual was not widely distributed, it did not apply to Boone's employment and did not create an implied contract for continued employment.

Boone directs us to the case of *Bear v. Volunteers of America, Wyoming, Inc.*, 964 P.2d 1245 (Wyo.1998), in support of his claim that the employment manual gave rise to an implied contract for continued employment even though it was not distributed to most of Frontier Refining's employees. In *Bear*, a majority of the Wyoming Supreme Court concluded that a disclaimer in Volunteers of America's employment manual prevented the implication of a contract for continued employment even though Bear claimed that she did not receive the disclaimer with the rest of her handbook. 964 P.2d at 1251–52. The *Bear* Court relied on a New Jersey Supreme Court case entitled *Nicosia v. Wakefern Food Corporation*, 136 N.J. 401, 643 A.2d 554 (1994), in reaching its decision. 964 P.2d at 1251. In *Nicosia*, the court held that the relationship between the employer and the employee was governed by the entire employment handbook even though the employee may have received only a portion of the handbook. 643 A.2d at 557–58. The New Jersey Supreme Court emphasized that the

employer had widely distributed the entire handbook among its employees. 643 A.2d at 557–59. By contrast, the uncontradicted evidence in this case established that Frontier Refining did not routinely distribute the employment manual to its nonsupervisory employees. Accordingly, the *Bear* case is not applicable to this case.

Other jurisdictions have considered the issue of what effect an employment handbook, which was not generally distributed to employees, has on the employment relationship. *See, e.g., Carbone v. Atlantic Richfield Company*, 204 Conn. 460, 528 A.2d 1137, 1142–43 (1987); *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213, 220–22 (1962). The courts in *Carbone* and *Cederstrand* applied a contract formation analysis to determine whether the parties intended to enter into a contract. *Id.* The Wyoming Supreme Court recently utilized a similar analysis in *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo.1999), to determine whether a handbook disclaimer was effective. We conclude that such an analysis is the appropriate method for determining the issue presented here.

■ The basic elements of a contract are offer, acceptance, and consideration. *Bouwens*, 974 P.2d at 946; *Miller v. Miller*, 664 P.2d 39, 40 (Wyo.1983). Our concern in this case is with the question of whether Frontier Refining's employment manual constituted an offer. An offer is " 'a manifestation of assent to enter into a bargain.' " *Bouwens*, 974 P.2d at 946 (quoting 1 E. Allan Farnsworth, Farnsworth on Contracts § 3.3., at 163 (1990)). This Court looks at the external or objective manifestations of the parties' intentions as revealed by their actions. *Id.* We determine whether a reasonable man in the position of the offeree would have believed that the other party intended to make an offer. *See id.*

Frontier Refining's employment manual was not generally available to its work force. Only managers and some supervisors were given manuals. Boone was not given a manual, did not read the manual, and consequently could not have relied on its terms. A reasonable person in Boone's position would not have considered the undistributed em-

ployment manual to be an offer. The district court correctly concluded that the employment manual did not alter Boone's status as an at-will employee. The district court's decisions granting summary judgments in favor of Frontier Refining on Boone's employment contract claims were proper.

## C. Retaliatory Discharge

Boone maintains that the district court erred by granting a summary judgment in favor of Frontier Refining on his claim that he was discharged in retaliation for reporting the unsafe condition to Frontier Refining. Frontier Refining argues that the district court's decision was correct. We agree with Frontier Refining.

The Wyoming Supreme Court adopted a tort cause of action for retaliatory discharge in *Griess v. Consolidated Freightways Corporation of Delaware,* 776 P.2d 752 (Wyo.1989). A claim for retaliatory discharge arises when a person is discharged from his employment in violation of public policy. *Drake v. Cheyenne Newspapers, Incorporated,* 891 P.2d 80, 81 (Wyo.1995). A plaintiff must satisfy two requirements in order to establish a retaliatory discharge claim: (1) The discharge violated a well established public policy; and (2) there is no other remedy available to protect the interests of the discharged employee or society. *Hermreck v. United Parcel Service, Inc.,* 938 P.2d 863, 866 (Wyo.1997); *Dynan v. Rocky Mountain Federal Savings and Loan,* 792 P.2d 631, 640 (Wyo.1990).

We would normally begin our analysis of a retaliatory discharge claim by determining whether the discharge violated public policy. This Court identifies public policy, and consequently conduct which violates public policy, by looking to " 'well-established legislative, judicial, or administrative mandate.' " *Dynan,* 792 P.2d at 640 (quoting *Cummins v. EG & G Sealol, Inc.,* 690 F.Supp. 134, 138 (D.R.I.1988)). It is not, however, necessary for us to determine whether discharging an employee for reporting an unsafe condition to his employer violates public policy because Boone failed to establish that Frontier Refining actually dis-

charged him for reporting the unsafe condition.

In *Cardwell v. American Linen Supply,* 843 P.2d 596, 599–600 (Wyo.1992), we discussed the relative burdens of the parties in a retaliatory discharge action. Although that case addressed a discharge allegedly resulting from the employee's filing of a request for worker's compensation benefits, some of the general principles announced in the decision are applicable to all retaliatory discharge cases. One of those principles is that an employee must show that his employer actually had a retaliatory motive for discharging him. *See* 843 P.2d at 599. In *Cardwell,* the employee was required to show that she was discharged because she requested worker's compensation benefits. *Id.* Similarly, under this principle, Boone was obligated to establish that Frontier Refining discharged him because he reported the unsafe condition.

A *prima facie* case of retaliatory discharge may be shown by circumstantial evidence because an employer is not likely to admit that it had an improper motive for discharging the employee. 843 P.2d at 600. In making that showing, " '[p]roximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations.' " *Id.* (quoting 2A Arthur Larson, The Law of Workmen's Compensation § 68.36 (1987)).

Boone reported the condition just prior to the explosion and fire that occurred in June 1992, and the managers questioned him a short time later. He was not fired until August 20, 1993. Accordingly, there was no proximity in time between Boone's report and his discharge. Furthermore, Frontier Refining stated that it discharged Boone because of his poor work performance. The summary judgment evidence included two performance appraisals which revealed that Boone's work performance was less than satisfactory. Boone alleges that he performed his job duties adequately and that Frontier Refining created the performance appraisals as a subterfuge to cover up its true motive for firing him. Boone did not, however, present evidence to prove his theory. He

failed to establish that Frontier Refining discharged him in retaliation for reporting the unsafe condition, and the district court correctly granted a summary judgment in favor of Frontier Refining on his retaliatory discharge claim.

### D. Promissory Estoppel

■ Boone contends that the district court erred by granting a summary judgment in favor of Frontier Refining on his claim for promissory estoppel. We agree with Frontier Refining's argument that Boone did not establish the requisite elements of a promissory estoppel claim. We discussed the elements of promissory estoppel in *Terry*, 947 P.2d at 276–77: "Promissory estoppel claims must show a clear and definite agreement, proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement, and that the equities support enforcement of the agreement."

Boone asserts that the parties had a clear and definite agreement that he could be discharged only if just cause existed. He states that the representations made during his interview, in the performance appraisal form, and in the employment manual prove that Frontier Refining promised him job security. We have already ruled that the oral representations and the written materials were insufficient to create a contract for continued employment. They are also insufficient to demonstrate a clear and definite agreement. *See Terry*, 947 P.2d at 276–77. Frontier Refining was entitled to a summary judgment on Boone's promissory estoppel claim.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ Boone contends that the district court erred by granting Frontier Refining a summary judgment on his tort claim for breach of the implied covenant of good faith and fair dealing. Frontier Refining maintains that the district court's decision was correct, and we agree.

■ All employment contracts contain an implied covenant of good faith and fair dealing. *Wilder*, 868 P.2d at 220. In order to maintain a tort claim for breach of the implied covenant, the employee must show that he had a special relationship of trust and reliance with his employer. 868 P.2d at 221.

We recently reviewed Wyoming case law discussing the special relationship requirement:

> In *Wilder*, we held that mere longevity of service does not suffice to create the special relationship leading to the tort remedy. *Wilder*, 868 P.2d at 221–22. *Garcia v. UniWyo Federal Credit Union*, 920 P.2d 642, 646 (Wyo.1996), added another factor to the concept of the special relationship. There we ruled that usually such a special relationship can be found only in a "long term employment relationship coupled with a discharge calculated to avoid employer responsibilities to the employees...." [920 P.2d] at 646. More recently, we said in *Loghry* [ ] that the trust and reliance necessary to give rise to the existence of such a tort claim may be found by "the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service." *Loghry*, 927 P.2d at 712.

*VanLente v. University of Wyoming Research Corporation*, 975 P.2d 594, 598 (Wyo. 1999).

■ Boone claims that Frontier Refining's employment policies guaranteeing its employees the right to be discharged only if just cause existed created the requisite special relationship. Earlier in this opinion, we concluded that neither Frontier Refining's employment manual nor its performance appraisal form created an implied contract for continued employment. Boone was an at-will employee. The mere existence of an employment relationship does not give rise to the special relationship that is necessary to establish the tort claim. *Wilder*, 868 P.2d at 221. Consequently, Boone failed to establish a special relationship to support his claim for breach of the implied covenant of good faith and fair dealing, and the district court properly granted a summary judgment in favor of Frontier Refining on that issue.

## F. Law of the Case

Boone asserts that the district court should have dismissed Frontier Refining's third summary judgment motion under the law-of-the-case doctrine. He claims that the issue presented in Frontier Refining's third motion for a summary judgment—whether Frontier Refining's representations to Boone gave rise to a contract for continued employment—was decided in favor of Boone in the earlier summary judgment rulings. Boone argues that the district court should not have revisited the issue.

In its initial ruling on Frontier Refining's second summary judgment motion, the district court stated that a genuine issue of material fact existed as to whether or not the parties had entered into an oral contract for continued employment. The parties did not, however, fully address that issue during the proceedings related to Frontier Refining's second motion for a summary judgment. The issue was fully developed during the proceedings associated with the third summary judgment.

District courts have discretion in determining whether to apply the law-of-the-case doctrine. *Brown v. State*, 953 P.2d 1170, 1174 (Wyo.1998). Under the facts of this case, the district court did not abuse its discretion when it revisited the issue after the parties had fully briefed it.

Affirmed.