2007 WY 69

**Derek J. LONG, II, Appellant (Plaintiff),**

v.

**Craig DALY; Sue Daly; and BNSF Company, a Delaware corporation, Appellees (Defendants).**

No. 06–118.

Supreme Court of Wyoming.

April 27, 2007.

Representing Appellant: Frank J. Jones, Wheatland, Wyoming.

Representing Appellees Craig and Sue Daly: Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Representing Appellee BNSF Co.: Paul Kapp and Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming. Argument by Ms. Bestol.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Derek J. Long, II was injured when the vehicle he was driving struck a cow that was lying on the highway. He filed a complaint for negligence against Craig and Sue Daly, the owners of the cow and the property from which it escaped, and Burlington Northern Santa Fe Company (BNSF), the owner of the railroad track located between the Dalys' pasture and the highway. The district court granted summary judgment for both defendants. We affirm.

## ISSUES

[¶ 2] Mr. Long presents two issues for this Court's consideration:

1. Are there genuine issues of material fact which preclude the granting of Summary Judgment in favor of Defendants in this negligence case?

2. Does the Defendant BNSF Company owe a duty of reasonable care to Plaintiff and did it breach that duty by failing to inspect, repair and maintain its right-of-way fence?

## FACTS

[¶ 3] On February 28, 2004, at approximately 2:00 a.m., Mr. Long was driving his vehicle west on U.S. Highway 26 in Goshen County, Wyoming when he struck a cow on the road. The cow was one of seven cows belonging to the Dalys that had escaped through a fence enclosing their pasture on the south side of the highway. The fence separates the Dalys' pasture from the BNSF right of way that runs along the railroad track next to the highway. Mr. Long was injured as a result of the accident.

[¶ 4] On April 11, 2005, Mr. Long filed a complaint against the Dalys and BNSF alleging that they had a duty to construct, maintain and repair the fence to prevent livestock from running at large on the highway and that they breached that duty. He alleged that as a result of their negligence he sustained serious permanent injuries and loss of earnings. The Dalys and BNSF answered the complaint, generally denying the claims and asserting various affirmative defenses. The parties proceeded with discovery, and the Dalys and BNSF filed motions for summary judgment.

[¶ 5] In its motion, BNSF argued there was no evidence that it breached any duty owed to Mr. Long. Alternatively, BNSF argued it owed no duty to Mr. Long or, assuming the existence of a duty, any breach of the duty was not the proximate cause of Mr. Long's injuries. The Dalys argued they were entitled to summary judgment because they exercised reasonable care in constructing and maintaining the fence and their conduct, as a matter of law, did not constitute negligence.

[¶ 6] After a hearing, the district court granted the motions for summary judgment. The district court concluded BNSF owed no duty to Mr. Long. The district court concluded the Dalys made a *prima facie* showing that they had exercised due care in constructing and maintaining the fence. Consequently, the district court held, the burden shifted to Mr. Long to rebut the Dalys' show-

ing. The district court found Mr. Long's rebuttal evidence was based on conjecture and insufficient to establish the existence of a genuine issue of material fact.

## STANDARD OF REVIEW

[¶ 7] When reviewing an order granting summary judgment, we consider the record *de novo*. *Hincks v. Walton Ranch Co.*, 2007 WY 12, ¶ 7, 150 P.3d 669, 670 (Wyo.2007). Our review is governed by W.R.C.P. 56(c), which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law.

[¶ 8] We view the evidence offered in support of and opposition to the motion in the light most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. *Hincks*, ¶ 8, 150 P.3d at 670. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. *Id.* Summary judgment is not favored in a negligence action and is, therefore, subject to more exacting scrutiny. *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37–38 (Wyo.2005). We will affirm summary judgment in negligence cases, however, where the record fails to establish the existence of a genuine issue of material fact. *Id.*

## DISCUSSION

[¶ 9] In order to maintain a claim of negligence, a plaintiff must prove: 1) the defendant owed the plaintiff a duty of reasonable care; 2) the defendant breached the duty; and 3) the defendant's breach was the proximate cause of injury or loss to the plaintiff. *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo.2002). The existence and scope of a duty are questions of law for the court. *Id.* Absent a duty,

there is no actionable claim of negligence. *Id.* Additionally, absent evidence that the defendant breached the duty by failing to exercise reasonable care, a claim of negligence is not sustainable. *Id.*

### 1. BNSF Duty of Care

[¶ 10] We begin our discussion with Mr. Long's claim that BNSF owed him a duty of reasonable care by virtue of Wyo. Stat. Ann. § 37-9-304(a) (LexisNexis 2005), which provides in relevant part:

> All railway corporations, owning or operating a line of railway within the state, shall construct, maintain and keep in repair on each side of the track thereof, a sufficient fence which meets or exceeds department of transportation fencing standards, so connected with suitable cattle guards at all public road crossings as to prevent stock from getting on the railroad track of the corporation.

Mr. Long argues this provision imposed a duty on BNSF to maintain the fence along the track, including the part of the fence where the cattle escaped. He further asserts the duty the statute created was owed to him as a member of the traveling public. BNSF argued, and the district court concluded, that the intent and scope of § 37-9-304(a) was to provide for recovery of damages when livestock is injured or killed on railroad tracks, not to impose a duty on railway companies such as BNSF to protect the motoring public. We agree with BNSF's contention.

[¶ 11] We have long recognized that the standard of care of a reasonable person may be established by legislative enactment. *Distad v. Cubin*, 633 P.2d 167, 171–72 (Wyo.1981). Even where a legislative enactment contains no express provision that its violation will result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence. *Id.*

[¶ 12] The express language of § 37-9-304(a) makes it clear that the intent of the statute is to "prevent stock from getting onto the railroad track." Wyo. Stat. Ann. § 37-9-

305 (LexisNexis 2005) further makes it clear that failure to comply with § 37–9–304 results in railroad liability to the owner of any livestock harmed as a result of its failure to comply. Thus, the statute under consideration in the instant case contains an express provision that its violation will result in liability to livestock owners and there is no question the requirements of the statute establish the standard of care a railroad owes to livestock owners.

[¶ 13] Mr. Long would have this Court extend the duty of care established by the statute beyond the livestock owner to the traveling public at large. Citing Restatement (Second) of Torts § 286 (2002), we have said the court may adopt as the standard of care of a reasonable person the requirements of a statute whose purpose is found to be exclusively to protect:

> (a) a class of persons which includes the one whose interest is invaded, and
>
> (b) the particular interest which is invaded, and
>
> (c) that interest against the kind of harm which has resulted, and
>
> (d) that interest against the particular hazard from which the harm results.

*Id.* We have also said the court may not adopt as the standard of care a statute the purpose of which is exclusively to protect a class of persons other than the one whose interests were invaded. *Id.*

[¶ 14] The purpose of § 37–9–304 is clearly to protect the livestock owner from harm to his livestock. Mr. Long does not fall into the class of persons whose interest the statute was intended to protect. Therefore, we decline to hold that § 37–9–304 imposed a duty of care on BNSF to protect Mr. Long. This result is consistent with other cases in which we have declined to adopt a statute as establishing a standard of care for the protection of persons outside the class the statute was intended to protect. *See Dubray v. Howshar,* 884 P.2d 23, 28 (Wyo.1994), holding statutes relating to liquor licenses did not a create a standard of care for bar owners to protect patrons from physical injury; *Burnett v. Imerys Marble, Inc.,* 2005 WY 82, ¶ 15, 116 P.3d 460, 463–64 (Wyo.2005), holding a Mine Safety and Health Administration regulation did not create a standard of care for mine owners to protect non-miners from injury. We hold the district court correctly concluded BNSF owed no duty to Mr. Long and summary judgment was appropriate on his claim against BNSF.

### 2. Summary Judgment For the Dalys

[¶ 15] Mr. Long also claims the district court erred in granting summary judgment for the Dalys because, he asserts, genuine issues of material fact existed as to the location and condition of the fence where the cattle escaped. The Dalys respond that Mr. Daly's testimony established the location of the escape and that the fence at that location was reasonably constructed and maintained; Mr. Long failed to rebut the testimony with any evidence other than conjecture; therefore, the district court properly granted summary judgment for them on Mr. Long's negligence claim.

[¶ 16] As the parties' respective arguments reflect, the dispute on appeal is not over the applicable law and whether the district court correctly applied it. The parties agree that under Wyoming law "no owner or person having custody or charge of livestock shall permit the livestock to run at large in any fenced public highways in Wyoming . . . ." Wyo. Stat. Ann. § 11–24–108(a) (LexisNexis 2005). The parties also agree, however, that livestock owners are not liable for damages to an injured motorist unless the evidence shows the livestock owner negligently permitted his livestock to escape from a fenced pasture. As the Court said in *Nylen v. Dayton,* 770 P.2d 1112, 1116 (Wyo. 1989), the mere presence of livestock on the road does not establish a violation of § 11–24–108(a). Rather, in order to establish negligence on the part of a livestock owner, evidence must be presented showing how the livestock got onto the road and that the owner, by failing to exercise reasonable care, permitted that to happen. *Hincks,* ¶ 18, 150 P.3d at 672.

[¶ 17] Reviewed *de novo,* and in the light most favorable to Mr. Long, the evidence presented in support of and opposition to the summary judgment motion showed that Mr.

Daly maintained the fence between his property and the railroad track in an exemplary manner. After he purchased the property in 1997, he built a new four-strand[1] barbed wire fence between his pasture and the track with double box corners and alternating wood and steel posts. At the spot where the cattle escaped, "the water gap"—a low spot where water intermittently flowed under the fence, he used railroad ties as posts rather than regular wood or metal posts because they were stronger and more durable and withstood water damage better than other types of posts. Between the ties, starting at the bottom and continuing to the top, he ran three three-quarter inch steel rods horizontally at even intervals followed by four spans of barbed wire. He also ran three long and four short stays vertically at four foot intervals between the ties along the barbed wire and the steel rods. Underneath the bottom rod, he attached a log horizontally to the stays in a manner allowing it to move with the water flowing through the drainage to allow debris to pass under the fence without damaging the fence.

[¶ 18] Mr. Daly further testified he had 122 head of cattle in this pasture for two months prior to the accident and there had been no problems. The night of the accident, he followed his normal practice of driving through the pasture and checking the cattle and fence before dark. He testified everything look normal. Despite his efforts, on February 28, 2004, sometime between dark and 2:00 a.m., seven of the cattle escaped from the pasture.

[¶ 19] At approximately 6:30 or 7:00 the next morning, Mr. Daly learned the cattle had gotten out. He checked to see how many cattle were still in the pasture and then checked the fence. He determined that the cattle had escaped through the fence where it crossed the water gap. He testified there was no indication the cattle had escaped through any other part of the fence. At the water gap, none of the barbed wire was down but the steel rods between the railroad ties were bent up and down, leaving a hole large enough for cattle to get through. Mr. Daly believed something must have spooked the cattle because "this is a very, very good fence, and there would be no other reason why seven head would run through a section of fence and just tear a big hole in it."

[¶ 20] In addition to Mr. Daly's testimony, the Dalys presented affidavits from several neighbors attesting to the superior quality of the Dalys' fences and their practice of regularly maintaining and repairing them. The Dalys also presented the affidavit of the insurance adjustor assigned by their insurer to investigate the accident. As part of his investigation, he compared the condition of the Dalys' fence at the water gap where the cattle escaped and the requirements for a "lawful fence" found in § 11–28–102 and concluded the Dalys' fence exceeded the statutory requirements. Finally, the Dalys presented the affidavit of Melanie Hout, a professional fencing contractor, who also concluded the Dalys' fence at the water gap exceeded the statutory requirements and was constructed "pursuant to the standards that reasonable Wyoming cattle owners, property owners, and fence builders must exercise" when building similar fences in Wyoming.

[¶ 21] Given this evidence, we agree with the district court's conclusion that the Dalys made a *prima facie* showing that they exercised due care in constructing and maintaining the fence. The burden then shifted to Mr. Long to present evidence refuting their evidence and establishing a genuine issue of material fact as to whether they exercised reasonable care. The evidence Mr. Long presented consisted of his father's and sister's testimony that they went out to the accident site the day after the accident and observed and photographed cow tracks between the railroad tracks and what they later learned was the Dalys' neighbor's fence. Mr. Long's father testified that a portion of that fence was "all brand-new shiny, still shiny, and spliced" and he "had suspicions that might be where [the cattle came] through." Other than his father's speculation, Mr. Long

---

1. Wyo. Stat. Ann. § 11–28–102(a) (LexisNexis 2005) requires for a lawful fence "three (3) spans of barbed wire . . . ."

presented no evidence with regard to when the neighbor's fence may have been repaired. Additionally, for the Dalys' cattle to have come through the neighbor's fence bordering the railroad tracks, they would have had to first breach the boundary fence between the Dalys and their neighbors and enter the neighbor's pasture before then breaching their fence onto the railroad right of way. No evidence was presented that the Dalys' fence bordering the neighbor's property was breached. Evidence speculating that the cattle might have escaped through, what appeared to Mr. Long's father to be a newly repaired section of the neighbor's fence does not establish a genuine issue of material fact on the negligence claim against the Dalys.

[¶ 22] The only evidence Mr. Long presented concerning the water gap fence was his father's testimony suggesting it was not in very good shape when he saw it after the accident and it must have been repaired later. His statement was consistent with Mr. Daly's testimony that he had, immediately after the accident, performed temporary repairs to the fence. By itself, Mr. Long's father's testimony that the water gap fence was not in very good shape after the accident simply was not sufficient to overcome the Dalys' *prima facie* case for summary judgment which showed they used reasonable care in constructing and maintaining the water gap fence before the accident. This is particularly true given the father's testimony that he was looking at the neighbor's fence the day he and his daughter inspected the site and not the fence at the water gap. Mr. Long also points to Mr. Daly's testimony indicating that other sections of his fence, between his and his neighbor's property, were in need of repair at the time of the accident; however, there was no evidence suggesting the cattle escaped from those locations. Mr. Daly's testimony that he believed the cattle escaped from the water gap was undisputed and was supported by his observations of the bent rods the morning after the accident. Absent evidence showing the cattle escaped from a different location, and that the Dalys failed to exercise reasonable care to maintain the fence at that location or at the water gap, the Dalys were entitled to summary judgment.

[¶ 23] After the parties filed their briefs with this Court, we issued our decision in *Hincks*, ¶ 18, 150 P.3d at 672, which Mr. Long then cited as supplemental authority supporting his claim. In *Hincks*, we reversed an order granting summary judgment for the livestock owner after concluding from the record that a question of material fact existed for jury determination as to whether the livestock owner exercised reasonable care to prevent cattle from escaping from his pasture onto a public highway. The evidence presented in *Hincks* was notably different from that presented in this case.

[¶ 24] In support of its summary judgment motion in *Hincks*, Walton Ranch presented very little affirmative evidence showing the quality of the construction and maintenance of its fence and gate and whether it met statutory or industry standards. Additionally, the evidence Walton Ranch presented concerning its inspection of the fence and gate prior to the cow's escape was vague at best. In the face of evidence indicating one of its cows got onto the highway either through a particular damaged section of fence or an unsecured gate, we concluded Walton Ranch did not present sufficient evidence to make a *prima facie* showing that it exercised reasonable care in constructing and maintaining the fence and gate. Because Walton Ranch failed to make a *prima facie* showing that it exercised reasonable care in the time frame of the accident to inspect and maintain the particular damaged portion of the fence or the unsecured gate where the evidence showed the cow escaped, the burden never shifted to Mr. Hincks to refute a *prima facie* showing and we held an issue of fact for jury determination existed as to whether Walton Ranch exercised reasonable care to prevent the cow from escaping.

[¶ 25] In contrast to *Hincks*, to support their summary judgment motion, the Dalys presented detailed affirmative evidence showing that the section of fence from which the cattle escaped was carefully and soundly built. To support that evidence, the Dalys submitted the affidavits of neighbors confirming the care with which they constructed

and maintained their fences and kept watch over their cattle and fences. The Dalys also presented affidavits from an insurance adjustor and an expert witness firmly establishing that the water gap fence was soundly built, exceeding the statutory requirements for what constitutes a lawful fence in Wyoming.

[¶ 26] The evidence the Dalys presented in support of summary judgment affirmatively showed that they exercised reasonable care in constructing and maintaining the only section of fence from which there was any evidence that the cattle could have escaped. They made a *prima facie* showing and the burden shifted to Mr. Long to refute that showing. Mr. Long's evidence was clearly insufficient to satisfy his burden because it was speculative and focused mostly on a section of fence that did not belong to the Dalys and over which they had no duty of care. Given the substantial difference in the evidence presented, *Hincks* does not provide support for Mr. Long's claim.

[¶ 27] We affirm the district court's order granting summary judgment for BNSF and the Dalys.