# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 129

APRIL TERM, A.D. 2015

*September 23, 2015*

BRYAN KING,

**Appellant**
**(Plaintiff),**

**v.**

S-14-0299

COWBOY DODGE, INC.,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
　　Bernard Q. Phelan of The Phelan Law Firm, Cheyenne, Wyoming

*Representing Appellee:*
　　Sean W. Scoggin of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\*Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Bryan King challenges the district court's grant of summary judgment to Appellee Cowboy Dodge, Inc.  King claims that his retaliatory discharge claim should proceed to trial because there are genuine issues of material fact concerning his retaliation claim.  After applying the correct legal standard as to the causal showing required and the proper standard of review for summary judgment, we agree with King and therefore reverse and remand.

## FACTS

[¶2]    Because this case was decided on summary judgment, we will generally state the facts in the light most favorable to King.  King was hired as an automobile painter in the body shop owned by Cowboy Dodge in Cheyenne on February 16, 2009.  He attested by affidavit[1] that he injured his back on December 3, 2010.  He later told his physician that he felt a "pop" in his low back, followed by pain radiating down his left leg.

[¶3]    He reported the injury to his supervisor Gary Gardner the following Monday, December 6, 2010.  According to King, Gardner did not suggest filing a report of injury with the Worker's Compensation Division, but instead steered King to chiropractic care at his own expense.

[¶4]    King claims that the chiropractor eventually advised him to seek medical care, and his sister, who evidently knew something about such things, recommended that he file a worker's compensation claim.  When he told Gardner his intent, Gardner replied that it was too late to get worker's compensation benefits, but that he would check with the office manager to see if King could file a claim.  A report of injury was completed and signed by both Gardner and King on January 24, 2011, and it was filed with the Worker's Compensation Division the same day.

[¶5]    Gardner sent King to Health Reach, a local urgent care clinic, for evaluation of his injury.  Health Reach in turn referred him to Dr. Vincent Ross, a Cheyenne family practitioner with additional training in orthopedics.  Dr. Ross started King on a course of physical therapy, which he pursued while he continued to work full-time for Cowboy Dodge.  King testified that after he applied for benefits, Gardner began to find ways to reduce his pay by assigning him to non-paying work.

[¶6]    On February 16, 2011, the Division accepted the late filing[2] and determined the injury to be compensable.  Cowboy Dodge did not contest that determination.  Eight days

---

[1] Cowboy Dodge points out that certain portions of King's affidavit are conclusory and speculative, and we agree that it is in some respects.  We have not included any of those statements in this opinion.

[2] Under Wyo. Stat. Ann. § 27-14-502(a) (LexisNexis 2015), an injured worker is required to report an injury to his employer as soon as possible and in no event later than 72 hours after the general nature of

1

later, on February 24, 2011, Gardner terminated King, told him that he was authorized to do so by his supervisor, and said he didn't need to give a reason.[3]

[¶7]    Coincidentally, King had an appointment with Dr. Ross that very day, and when he explained that he had been terminated, Dr. Ross certified him to be temporarily totally disabled based upon a herniated lumbar disk with associated left leg radiculopathy.[4]  The Division awarded benefits, in response to which Cowboy Dodge objected and sought an administrative hearing before the Office of Administrative Hearings (OAH).

[¶8]    At the hearing, Cowboy Dodge presented documents critical of King's job performance because he failed to properly match the paint on two vehicles.[5]  There was evidently tension between King and his employer concerning blend time—the time required to match paint.  In the first instance, the paint did not match, and the customer insisted on taking the vehicle to another body shop to redo the work.  Cowboy Dodge had to refund the money it was paid by the insurance carrier.  However, Gardner knew the paint did not match when he turned the vehicle over to the customer.  A disciplinary action form related to this event was dated January 7, 2011, but it was not signed by King in a block for "employee signature," nor was there any indication that King refused to sign.

[¶9]    The second vehicle also had to be repainted because the paint did not match.  There is another written disciplinary action form dated February 18, 2011.  In the place for "employee signature," the words "Brian King" were printed, misspelling "Bryan."

[¶10]  Gardner claimed to have discussed these problems with King when the forms were completed.  King unequivocally denied that Gardner or anyone else ever complained or counseled him about these incidents or any other aspect of his job performance, and that he had ever seen those documents before the OAH hearing.  He pointed out that his name is spelled "Bryan" and not "Brian," as it appears in the signature block on the form relating to the second paint job.  Confronted with this seeming inconsistency, Gardner explained that he just needed to write the employee's name somewhere on the form to indicate whose file it was to be placed in.  Why he chose to write it in the place for the employee signature rather than somewhere else on the form is not clear.

---

the injury becomes apparent.  The employee is also required to file an injury report on a form prescribed by the Division within ten days after the injury became apparent.  King did not meet these time requirements, which he claims was because he was told to get chiropractic treatment at his own expense.

[3] There is no doubt that King was an at-will employee.  As discussed below, this fact has no bearing on whether he can pursue a tort claim for retaliatory discharge for filing a worker's compensation claim.

[4] An MRI revealed "a large herniated disc at L4-5 and L5-S1."  Radiculopathy is pain, tingling, numbness or weakness caused by compression or irritation of a nerve root.

[5] It is difficult to see what relevance this had to a worker's compensation claim, because it would not have been a defense.

[¶11]  The OAH awarded King temporary total disability benefits.  He ultimately had a discectomy which relieved at least some of his symptoms.  He claims that his physicians would have allowed him to return to work a week after the surgery, although he did not do so and instead pursued physical therapy through Dr. Ross's office.[6]  He was thereafter determined by the Division to have reached maximum medical improvement, and his temporary total disability benefits were terminated on January 18, 2012.  He received a 9% permanent partial impairment rating on January 27, 2012.  On January 31, 2012 he waived payment for the impairment and applied for a vocational rehabilitation program administered by the Division instead.  He indicated in that application that his physician had restricted him from heavy lifting or crouching.

[¶12]  The Division granted the benefits, finding as follows:

> The compensable injury has resulted in a permanent impairment due to the nature and extent of the injury and will prevent you from returning to gainful employment in any occupation for which you have training or experience during the (3) year period before the injury.

King testified that he was engaged in vocational rehabilitation treatment as of the date of his deposition, May 30, 2014.[7]

[¶13]  King sued Cowboy Dodge in Laramie County District Court on June 24, 2013, claiming that he was entitled to damages in tort because the company terminated him in retaliation for filing his worker's compensation claim.  Cowboy Dodge answered, denying that King was terminated for filing the compensation claim, and raising certain affirmative defenses.  Cowboy Dodge then moved for summary judgment, claiming that King could not establish a prima facie case of retaliatory discharge, that he did not have a claim for damages because he received temporary total disability benefits and participated in vocational rehabilitation, and that he could not recover damages for mental or emotional damages.  King responded with facts he claimed presented a prima facie case and which he said showed that the reasons given for his discharge were pretextual.

---

[6] This statement might arguably be hearsay.  However, certain statements are "verbal acts" or contain "words of independent legal significance."  That is, certain utterances, such as offers and acceptances of contracts, directions to take certain action, etc., are in the nature of deeds although they are couched in words.  *See, e.g.*, 4 Mueller & Kirkpatrick, *Federal Evidence* § 8:18 (Westlaw database updated 2015) (such words can include "permission to act").  On the limited record before us, we will treat this statement as one of those exceptions to the hearsay rule and consider it to be an authorization to return to work within a specified period, although it does seem unusual that a patient would be released to work at a job requiring some lifting, crouching, etc., a week after back surgery.

[7] In his affidavit, which was signed on August 18, 2014, King attested that he was working full time and earning $2,000 per month.  We cannot tell whether he had completed the vocational rehabilitation program or was working at a job in the program at that time.

[¶14]  The district court granted the motion, finding that King had failed to make the required showing that his termination was "consequent" to filing a worker's compensation claim, and therefore granted summary judgment.

## ISSUES PRESENTED

[¶15]  The parties identify several issues which we restate as follows:

> 1.  Did the district court err in finding that Appellant King failed to present sufficient evidence that his filing of a worker's compensation claim was causally related to his discharge by Cowboy Dodge to raise a genuine issue of material fact?
>
> 2.  Regardless of the answer to the first question, must the summary judgment be affirmed because King did not provide sufficient evidence of damages to avoid summary judgment?
>
> 3.  As to the second issue, does King have some entitlement to recover damages for emotional distress which might create a genuine issue of material fact for trial?

## STANDARD OF REVIEW

[¶16]  Our standard for review of a summary judgment has been stated often and consistently:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards.  [*Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo. 1999)]; *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998).  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  *Id.*  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  *Id*.  If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the nonmoving party to present appropriate supporting materials posing a genuine issue of a material fact for trial.

4

> *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh*, 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo. 1997).

*Moats v. Professional Assistance, LLC*, 2014 WY 6, ¶ 17, 319 P.3d 892, 896 (Wyo. 2014) (citing *DiFelici v. City of Lander*, 2013 WY 141, ¶ 7, 312 P.3d 816, 819 (Wyo. 2013); *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)). We can affirm an order granting summary judgment on any basis appearing in the record. *Id.*

## DISCUSSION

### *Propriety of Summary Judgment on Basis of the Prima Facie Case*

[¶17] The great majority of jurisdictions have recognized by statute or judicial decision that employees may recover in tort when they are discharged in retaliation for filing a worker's compensation claim. *See* 9 Lex A. Larson, *Larson's Workers' Compensation Law* § 104.07[1] (2014). This remedy is available to at-will employees as well as those whose employment is terminable only for cause. *Id.* In *Griess v. Consolidated Freightways Corp. of Delaware*, 776 P.2d 752 (Wyo. 1989), Wyoming joined those jurisdictions by judicially recognizing the tort in response to a certified question from the Wyoming Federal District Court. *Id.* at 754. This Court explained:

> We have been cautious about approving tort actions which might interfere with the traditional rule of "at will" employment. However, in the unique situation presented here, where a strong public policy is embodied in the worker's compensation statutes and the constitution and no other remedy is available, an exception to the doctrine of "at will" employment is justified.

*Id.* (citations omitted).

[¶18] The certification in *Griess* indicated that the part-time dock worker plaintiffs were told that they would not be called back if they filed for workers' compensation benefits, and therefore that case did not present the issue we confront in this appeal – that is, what proof must there be to avoid summary judgment and allow a jury to decide if a particular discharge was in retaliation for filing a claim when the employer has not admitted a retaliatory basis for it? A review of the cases cited in Larson indicates that the case law on this issue has evolved, and this opinion and its forebears will be evidence of the truth of that statement. 9 Larson*, supra.*

5

[¶19] In a relatively early post-*Griess* case, this Court indicated that a plaintiff could recover on a retaliation claim only "if there were no other legitimate reason for the termination." *Lankford v. True Ranches, Inc.*, 822 P.2d 868, 872 (Wyo. 1991). Soon thereafter, the Court approved a burden-shifting approach that allowed a discharged employee to prove retaliation not only directly, but also by showing that the explanation given for the discharge was a pretext, although the ultimate burden of persuasion was always to fall on the employee. *Cardwell v. American Linen Supply*, 843 P.2d 596, 599-600 (Wyo. 1992). That case relied upon an Oklahoma decision based upon a statutory cause of action. The *Cardwell* elements can be summarized as follows:

1.      The employee must make a prima facie case showing employment, on-the-job injury, treatment that put the employer on notice that treatment had been rendered for a work-related injury, or that the employee had instituted, or caused to be instituted, procedures under the Wyoming Worker's Compensation Act, and *consequent* termination of employment.

2.      After a prima facie case is established, the burden shifts to the employer to rebut the inference that its motives were retaliatory by articulating a legitimate non-retaliatory reason. Two such reasons may include the employee's inability to perform assigned duties, or bad faith pursuit of a compensation claim. The employer need not persuade the court that it was actually motivated by the proffered reasons. The burden is one of production – the employer must raise a genuine issue of fact as to whether it retaliatorily discharged the employee.

3.      The employee may then meet its ultimate burden of persuasion by proving directly that the discharge was motivated by the exercise of his rights under the Act or by showing that the employer's proffered explanation is not worthy of credence, i.e., that it is a pretext.

*Cardwell*, 843 P.2d at 599-600. The case further explained, quoting Larson, that:

> Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations. Any evidence of an actual pattern of retaliatory conduct is, of course, very persuasive.

*Id.* at 600 (quoting 2A Larson, *supra*, § 13-187 to 188 (1987)). This burden-shifting approach was drawn from the procedure approved for federal Title VII discrimination

6

cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

[¶20]  In the later case of *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the United States Supreme Court explained that once the employer has met its burden of production, the *McDonnell Douglas* burden-shifting framework is no longer relevant, and the employee retains the ultimate burden of persuasion. *Id*. at 510-11, 113 S.Ct. at 2749. *St. Mary's* involved a ruling after a bench trial, rather than a summary judgment, and the discussion there centered on whether judgment as a matter of law should have been entered. The Court emphasized that the trier of fact's rejection of the proffered reasons for termination – i.e*.,* a finding that they were pretextual – will suffice to prove intentional discrimination. *Id.*

[¶21]  Another case relevant to our discussion is *Buckner v. General Motors Corp.*, 760 P.2d 803, 807 (Okla. 1988), which this Court relied upon in *Cardwell*. As noted above, the Oklahoma legislature enacted a statute prohibiting discharge for filing a worker's compensation claim, but without the *McDonnell Douglas* burden-shifting procedure.[8] The statute has since been repealed.

[¶22]  In *Buckner*, the Oklahoma Supreme Court used the word "consequent" to describe the required causal connection between seeking worker's compensation benefits and the termination. 760 P.2d at 806. That term found its way into *Cardwell*, because that decision relied upon *Buckner. Cardwell,* 843 P.2d at 599. The district court in this case therefore understandably focused upon the word "consequent" in *Cardwell.* It looked to the dictionary definition of that term, noting that absent guidance as to its meaning, it should apply the word's plain and ordinary meaning. Thus, it concluded that the term meant "as a result or effect," and went no further in the burden-shifting analysis.

---

[8] 85 O.S. 1981 §§ 5 and 6 were repealed in 2011. They provided before repeal that:

> § 5:  No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.

> § 6:  A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

[¶23] Unfortunately, *Buckner* and therefore *Cardwell* did not adequately explain the showing required by the case law. Before *Buckner*, the Oklahoma Supreme Court had held that "when retaliatory motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify termination, the discharge violates the intent of section 5."[9] *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463 (Okla. 1987); *see also Elzey v. Forrest*, 739 P.2d 999, 1003 (Okla. 1987) (elaborating that once an employee shows that his filing of a worker's compensation claim was a significant factor in his discharge, he has made a prima facie case). The *Buckner* court's use of the term "consequent" therefore appears to have been shorthand for the test set forth in earlier cases—at least there is no indication that the Oklahoma Supreme Court intended to overrule decisions which were at most about a year old. *Buckner*, 760 P.2d at 806. This Court's use of the same term from *Buckner* was, therefore, perhaps misleading.

[¶24] The Oklahoma standard is consistent with that applied in the majority of cases which have adopted the tort of retaliatory discharge, when the standard is not spelled out in the statute. 9 Larson, *supra*, § 104.07[3] (listing in footnote 50 Kentucky, Missouri, Texas, and the District of Columbia). The test is articulated slightly differently in other states – some cases say the employee must show that his filing of a worker's compensation claim was a "substantial and motivating factor" in his or her discharge *Id*.; *Delano v. City of South Portland*, 405 A.2d 222, 229 (Me. 1979) (injured employee who was demoted must prove that the decision was "rooted substantially or significantly in the employee's exercise of his rights under the Workers' Compensation Act"); *First Property Management Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993) (employee must prove that filing or pursuing a worker's compensation claim was a substantial and motivating factor in causing his discharge*); Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 384 (Mo. 2014) (overruling prior cases espousing an exclusive causation standard and holding that the plaintiff must only prove that the filing of a worker's compensation claim was a "contributing factor" in a discharge).[10]

[¶25] We believe that the "substantial and motivating factor" test is the appropriate one to be used in determining whether a plaintiff has proven the required causal connection between a compensation claim and discharge. It protects workers' rights to make a compensation claim, and it recognizes that it may often be difficult to determine whether the filing of the claim was coincidental, the straw that broke the camel's back, or a

---

[9] This was the statute in force at the time – see footnote 8, *supra*.

[10] We acknowledge that the United States Supreme Court has recently adopted a "but-for" standard for Title VII retaliation cases, and that this standard was argued unsuccessfully in *Thompson v. Medley Material*. *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2527-28, 186 L.Ed.2d 503 (2013). We are not bound to follow the United States Supreme Court's lead on this issue, as we interpret the requirement of a state law tort and not a federal statute. *See Vollemans v. Town of Wallingford*, 928 A.2d 586, 594 (Conn. 2007) (noting that [like Wyoming] Connecticut is the final arbiter of its own laws, although federal case law is often of "great assistance and persuasive force").

motivation that led the employer to manufacture grounds for termination. These are questions that jurors, the majority of whom will either be employers or employees, are particularly well-suited to answer.

[¶26] Accordingly, we must conclude that the district court employed the wrong standard (although understandably so), as its analysis required that the only basis for the decision had to be the filing of the claim. This effectively rendered the rest of the burden-shifting process irrelevant. We will next apply the clarified test, because we may affirm on any grounds appearing in the record. *Moats,* 319 P.3d at 896.

*Application of the Test to the Evidence*

[¶27] At the outset, we note that the burden-shifting approach is hardly the stately minuet the case law suggests, and particularly so as it applies to summary judgment motions.[11] As occurred in this case, the employer often moves for summary judgment under Wyoming Rule of Civil Procedure 56, and it understandably puts on its best case. The employee then has an opportunity to respond with his best case, followed by a reply from the employer. Nonetheless, we will apply the burden-shifting analysis to the evidence the parties presented, although it did not come before the district court in the order *Cardwell* and other cases might imply.

[¶28] At the outset, we note that Cowboy Dodge argues that King's testimony was not credible. Unfortunately, if that was a basis for the district court's decision, it would not adhere to the standard of review on summary judgment, which requires both the district court and this Court to view the evidence in the light most favorable to King, giving him the benefit of all favorable inferences to be drawn from it. *Moats,* 319 P.3d at 896.

[¶29] We begin by determining if King met his burden as to the first step, the prima facie case. We have defined "prima facie evidence" as

> [e]vidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and **which if not rebutted or contradicted,** will remain sufficient. Evidence which, **if unexplained or uncontradicted,** is sufficient to sustain a judgment in favor of the issue which it supports, but **which may be contradicted by other evidence.**

---

[11] It is not really the dance envisioned by the case law when the suit goes to trial, either. The employee is motivated to put on his best case in his case-in-chief, and given the availability of liberal discovery, will normally know well in advance what the defense to his claims will be and anticipate them.

9

*Kruzich v. Martin-Harris Gallery, LLC*, 2006 WY 7, ¶ 16, 126 P.3d 867, 874 (Wyo. 2006) (emphasis added) (appeal of agency decision on claim of retaliatory discharge based on disability) (citing *Motor Vehicle Admin. v. Karwacki*, 666 A.2d 511, 516-17 (Md. 1995)).

[¶30] Reviewing the record *de novo*, as we must, we find that King presented the following facts, from which certain favorable inferences may be drawn:

- King was terminated eight days after the Worker's Compensation Division approved some level of benefits. We observed in *Cardwell* that mere proximity in time does not prove the required causal connection. 843 P.2d at 600. In this case, there is more.

- When King reported his work-related injury to Gardner, Gardner told him to seek chiropractic treatment at his own expense without informing him of the option to file a worker's compensation claim. When King returned, knowing that he could make such a claim, Gardner told him that his claim would be untimely, although he ultimately completed the required forms, evidently after consulting with Cowboy Dodge's human resources officer.

- King testified that after he filed his compensation claim and before he was terminated, Gardner began to cause problems with his pay by assigning him to tasks for which Cowboy Dodge would not pay. Viewed in the light most favorable to King, this could suggest an effort to encourage him to quit because he filed the claim.

- King testified that when Gardner terminated him, he refused to give a reason. Although Cowboy Dodge did not have to give a reason to terminate King, who was an at-will employee, Gardner's failure to do so must be considered in light of the above events.

[¶31] This proof is sufficient to meet the *Cardwell* requirements (as we have clarified them) for the first stage of the burden-shifting process. He produced evidence which, if believed, would show that:

- He was employed by Cowboy Dodge.

- He was injured on the job.

- He received treatment and filed a claim of which Cowboy Dodge was aware.

10

- The alignment of these facts could support an inference that his application for worker's compensation benefits was a substantial and motivating factor in Cowboy Dodge's decision to terminate him.

[¶32] The burden then shifted to Cowboy Dodge to produce evidence of a legitimate non-retaliatory reason for discharge. It met its burden by producing evidence which, if believed, would show that King was terminated because he made two expensive mistakes in mixing paint, the second of which occurred after he was counseled about the first.

[¶33] At that point, the onus shifted back to King to prove directly that the filing of a worker's compensation claim was a substantial and motivating factor in Cowboy Dodge's decision to terminate him, or that its proffered explanation for terminating him was a pretext. In addition to that summarized above, he produced the following evidence indicative of a retaliatory motive or pretext:

- Cowboy Dodge did not present the two personnel action forms purporting to record counseling for two instances when paint did not match the portions that were not repainted to the OAH until months after King was discharged. King testified that Gardner had never shown him those forms, and that he had never counseled him in any manner about his job performance. He claimed never to have seen or to have been told about the forms until at the temporary total benefits hearing before the OAH.

- Viewed in the light most favorable to King, the forms are suspicious. Gardner claims that King refused to sign one of the forms. The record is silent as to why Gardner did not write "employee refused to sign" on them, as is a common practice, and it is suspicious that he wrote "Brian King," misspelling King's first name, in the signature block of the second rather than someplace else on the form.

- It is true, as Cowboy Dodge points out, that there is no dispute that the errors in matching paint occurred. These seem to be serious, and perhaps they are, but the record does not tell us whether such errors are common and whether termination was the discipline usually imposed on those who had not filed a worker's compensation claim. And, as already noted, no reason was given King on the date he was terminated.

[¶34] At this stage of the proceedings, the Court must accept King's explanations as true if evidence in the record supports them, and it must also afford him all favorable inferences to be drawn from the facts in the record. We conclude that he produced sufficient evidence to raise genuine issues of material fact based on the showing described above, whether this proof is characterized as direct evidence or as evidence of pretext.

11

[¶35] If there are no other grounds in the record to affirm the district court, King will be entitled to present his claims to a jury, and he will bear the burden of persuading it that his discharge was retaliatory, i.e., that seeking worker's compensation benefits was a substantial and motivating factor in Cowboy Dodge's decision. He can do so by proving that the reasons now given are pretextual. *Cardwell,* 843 P.2d at 599-600. This is not to suggest that a reasonable jury would in fact find his version of the facts more persuasive than Cowboy Dodge's at trial – we hold only that King proved enough to be entitled to a trial.

### *Absence of Damages*

[¶36] Cowboy Dodge argues that even if King could make out a claim for retaliatory termination, he has failed to prove any damages. It also argues that he cannot recover damages for mental injury or emotional distress because his discharge was proper, since he is an at-will employee.

[¶37] Taking the second argument first, if in fact King had no claim for retaliatory discharge, he could only recover damages for emotional distress or mental injury through a claim of intentional infliction of emotional distress. Since he did not plead a claim for intentional infliction of emotional distress, and has not argued in favor of one on appeal, we see no need to address that claim.

[¶38] However, in *Griess*, we recognized that the claim that an employee has been terminated in retaliation for filing a worker's compensation claim is a tort. 776 P.2d at 754 ("We hold that a person whose employment is terminated for exercising rights under the worker's compensation statutes and who is not covered by the terms of a collective bargaining agreement has a cause of action in tort against the employer for damages.").

[¶39] Damages recoverable in tort for this type of retaliatory discharge include those for emotional distress or suffering, just as with other torts, if the plaintiff can prove those injuries and causally connect them to his discharge. W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 130, at 1029 (5th ed. 1984) ("Where a tort theory [of retaliatory discharge] is made out, the aggrieved plaintiff may recover tort damages, including punitive damages and mental distress damages in appropriate cases."); 11 Stuart M. Speiser et al., *The American Law of Torts* § 34:105, at 697 (2012) (damages for emotional distress may be recovered as compensatory damages in action for a retaliatory discharge); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 355 (Iowa 1989) (award of damages for emotional distress affirmed when employee was terminated in violation of public policy, even though employee did not prove that the emotional distress was severe, and this right to recover is distinct from the tort of intentional infliction of emotional distress); *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 702 (W.Va. 1982) (tort of retaliatory discharge carries with it a sufficient indicia of intent to allow recovery of damages for emotional distress); *Chavez v. Manville Products Corp.*, 777 P.2d 371,

12

377 (N.M. 1989); *Cagle v. Burns & Roe, Inc.*, 726 P.2d 434, 438 (Wash. 1986) (emotional distress damages recoverable in intentional tort of wrongful termination in violation of public policy); 82 Am.Jur.2d *Wrongful Discharge* § 229 (Westlaw database updated 2015) (wrongfully terminated employees may be entitled to recover damages for emotional or mental distress, but only in tort).

[¶40]  Accordingly, King may be entitled to recover damages for emotional distress, if he can prove he has suffered any that are related to a retaliatory discharge for filing a worker's compensation claim.  Cowboy Dodge did not make the required initial showing that King has not suffered such damages, and the burden to present facts establishing them therefore did not shift to him.  King is thus entitled to rely on his pleadings without making a factual showing on this element.  *Baker v. Speaks,* 2013 WY 24, ¶ 58, 295 P.3d 847, 860 (Wyo. 2013) (citing *Long v. Daly,* 2007 WY 69, ¶ 24, 156 P.3d 994, 1000 (Wyo. 2007); *Thunder Hawk by and through Jensen v. Union Pacific R. Co.*, 844 P.2d 1045, 1050-51 (Wyo. 1992); *O'Donnell v. City of Casper*, 696 P.2d 1278, 1287 (Wyo. 1985) (burden was not shifted due to failure of movant to make a prima facie showing of ownership of property against which execution was sought)).

[¶41] Cowboy Dodge argues also that King has no pecuniary damages, because he claimed temporary total disability benefits the day he was fired, received those benefits for an extended period, and has now participated in a vocational rehabilitation program which will retrain him to perform a different job.  Leaving aside the troubling fact that King applied for benefits based on his inability to work, the record reflects that King claimed to be able to work up to and after applying for temporary total disability payments, and after his surgery.  He was paid less in benefits than he earned while employed.

[¶42] It is true that an employer can discharge an employee without liability for retaliatory discharge if the employee is no longer capable of performing the duties of the job.  9 Larson, *supra*, § 104.07[4].  But there is no indication that Cowboy Dodge considered King to be physically unable to perform his duties when it fired him, and he claims that he was able to work, thus raising an issue of fact.  We note that the United States Supreme Court has held that a cause for discharge unknown to the employer when an employee was fired cannot support the termination, although it can reduce damages for a violation of the Age Discrimination in Employment Act.  *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 361-62, 115 S. Ct. 879, 886, 130 L.Ed.2d 852 (1995) (cause discovered after termination precluded reinstatement and front pay, and back pay to the date the wrongdoing was discovered).  We cannot tell from this record what duties King could have performed, and for how long.

[¶43] Whether King can recover damages—nominal, compensatory, or punitive—are not questions this Court can decide on this record.  *See* 9 Larson, *supra,* § 104.07. Whether they can properly be addressed through further motion practice or only by trial

remains to be determined by the trial judge. A myriad of factors will no doubt come into play at the trial level.

[¶44] We recognize that King represented to the Division that he was unable to work in any occupation, won a contested case by proving that proposition to the OAH, and accepted benefits for vocational retraining. These facts suggest issues of judicial or collateral estoppel, but these defenses were not pled below, and they were not briefed there or in this Court, although they were mentioned in argument. The record is insufficient to allow us to address them here, probably because the focus below was on the sufficiency of the prima facie case. We therefore decline to address them *sua sponte*.

## CONCLUSION

[¶45] We find that King presented sufficient evidence that his filing of a worker's compensation claim was causally related to his discharge to raise a genuine issue of material fact for trial. We are unable to affirm on other grounds for the reasons stated above. We therefore reverse and remand for further proceedings consistent with this opinion.